AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

**The office of Karen Burroughs**
**United States Forest Service**
**Yates Federal Building**
**201 14th Street, 2nd Floor, Room 2, Central, SW**
**Washington, D.C. 20250**

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER:

(Further described below)

I    **James P. Knorr**    being duly sworn depose and say:

I am a(n) **Special Agent with the United States Department of Agriculture (USDA) - Office of Inspector General (OIG)** and
(Official Title)
have reason to believe that ☐ on the person of or ☒ on the property or premises known as (name, description and or location)

**The office of Karen Burroughs, United States Forest Services, Yates Federal Building, 201 14th Street, 2nd Floor, Room 2, Central, SW, Washington, DC 20250** including any locked or padlocked rooms within. **(as further described in "Attachment A", incorporated fully herein by reference)**

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property to be searched) **(as further described in "Attachment B", incorporated fully herein by reference)**.

which is (state one or more bases for search and seizure set forth nder Rule 41(b) of the Federal Rules of Criminal Procedure)
**evidence and instrumentalities.**

concerning a violation of Title **18** United States Code, Section(s) **§§ 641, 1001, 287, 1343, 1956 & 1957.** The facts to support a finding of Probable Cause are as follows:

**SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN**

Continued on the attached sheet and made a part hereof.    ☒ YES   ☐ NO

Daniel P. Butler
Fraud and Public Corruption
(202) 353-9431

Sworn to before me, and subscribed in my presence

Date

Name and Title of Judicial Officer

Signature of Affiant
James P. Knorr, Special Agent
United States Department of Agriculture (USDA) - Office of Inspector General (OIG)

at Washington, D.C.

Signature of Judicial Officer

AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, JAMES P. KNORR (hereinafter "affiant"), Senior Special Agent, United States Department of Agriculture ("USDA"), Office of Inspector General ("OIG"), Office of Investigations, hereby depose and state as follows:

## I. OBJECTIVE

The objective of this affidavit is to secure a search warrant for the office space and computers used by KAREN BURROUGHS ("BURROUGHS"), an employee of the United States Forest Service, which is a component of the USDA.  This office space/cubicle and computers, used by BURROUGHS, are located at the Yates Federal Building  201 14th Street, 2nd floor, room 2 Central, SW, Washington, D.C.  20250; more fully described in greater detail in Attachment A to this affidavit, in that there is probable cause to believe that in such properties there are evidence, fruits, and/or instrumentalities of criminal activities, more fully described in Attachment B, including, among others, violations of 18 U.S.C. §§ 641 (theft of government property), 1001 (false statements), 287 (false claims),1343 (wire fraud), and 1956 & 1957 (money laundering).

## II. CREDENTIALS

Affiant has been a Senior Special Agent with the OIG, USDA, since 1978 and has been involved in over 1,000 investigations of food stamp trafficking, theft, and other criminal violations in Maryland, Virginia, and the District of Columbia.  Affiant has executed numerous federal arrest and search warrants regarding violations of 7 U.S.C. § 2024 (b), the illegal transfer or sale of food stamp benefits; 18 U.S.C. § 641, theft of government property; 18 U.S.C. §§ 1956 & 1957, money laundering; and 18 U.S.C. 371, conspiracy to defraud the government; and has also been the affiant on more than hundreds of federal and state search and arrest warrants.  Affiant has attended the basic Criminal Investigator Training course at the Federal Law Enforcement Training Center along with

advance training in white collar fraud, computer related crimes and money laundering.

### III. SOURCE OF EVIDENCE

The facts set forth in this affidavit are based upon my personal knowledge, knowledge obtained during my participation in this investigation, knowledge obtained from other individuals including federal employees and other law enforcement personnel, my review of documents related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through training and experience. This affidavit sets forth the facts necessary to establish probable cause for the proposed search, but does not set forth every fact I have learned in this investigation.

### IV. RELEVANT STATUES

1. Title 18, United States Code, Section 641, makes it unlawful for anyone to embezzle, steal, or purloin, or knowingly convert to his/her use or the use of another money or any thing of value of the United States of America, or any department or agency for the United States.

2. Title 18, U.S.C., Section 1001, makes it unlawful for anyone, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the government of the Government of the United States, to knowingly and willfully (a) falsify, conceal, or cover up by any trick, scheme, or device a material fact; (b) make any materially false, fictitious, or fraudulent statement or representation; or (c) make or use any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

3. Title 18, United States Code, Section 287, makes it unlawful for anyone to make or present a false, fictitious, or fraudulent claim upon or against the United States, or any department or agency thereof.

4. Title 18, United States Code, Section 1343, make it unlawful for anyone, having devised

or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, to use the interstate or foreign wires for the purpose of executing such scheme.

5. Title 18, United States Code, Section 1956, makes it unlawful for anyone, knowing that property involved in a financial transaction represents the proceeds of some form or unlawful activity, to conduct or attempt to conduct a financial transaction which in fact involves the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity. Title 18, United States Code, Section 1956(c)(7)(D), lists offenses under 18 U.S.C. § 641 as constituting "specified unlawful activity."

6. Title 18, United States Code, Section 1957, makes it unlawful for anyone, within the territory of the United States, to knowingly engage in a monetary transaction in criminally derived property of value greater than $10,000, which is derived from specified unlawful activity. The term "specified unlawful activity" has the same meaning as in Section 1956, discussed above. 18 U.S.C. § 1957(F)(3).

## V. BACKGROUND AND HISTORY

7. This investigation was initiated based on a confidential complaint submitted to the USDA OIG "Hotline," alleging that BURROUGHS, a Forrest Service employee, for the first 15 pay periods of Fiscal Year 2008, had charged 1,132 hours of overtime which is over 75 hours per two-week pay period. The complaint stated that BURROUGHS has claimed overtime in every pay period this fiscal year (2008). The complaint also stated that BURROUGHS makes more in overtime than her regular base salary of $57,592 a year. The complaint further stated that this was an excessive use of overtime pay and seemed very suspicious.

8. BURROUGHS is employed by USDA, Forrest Service as a management analyst, GS 12.

Her office is located at the YATES Building, 201 14th Street, 2nd floor, SW, Washington, DC 20250. BURROUGHS has been employed by USDA Forrest Service since about 2001.

9. Agriculture employees are paid their salary through the Finance Center in Louisiana, and employees' pay information is sent to and from that Center by electronic communications.

VI.  PROBABLE CAUSE for SEARCH

10. On June 30, 2008, affiant interviewed complainant by telephone who provided the following information: Complainant is a program analyst for the Forrest Service located outside of the Washington, D.C., area. In May of 2008, complainant decided to check the performance accountability system for the Forest Service to determine the amounts of overtime and cash awards that other Forest Service employees had received in 2008. Complainant obtained this information from a computer source available to Forest Service employees. Complainant observed an employee by the name of BURROUGHS receiving excessive amounts of overtime in 2008 in the approximate amount of $57,775. Complainant thought that this was quite peculiar since BURROUGHS' overtime was more than her base salary at that time. Complainant then checked BURROUGHS' overtime for 2006 and 2007 and observed that BURROUGHS had received $68,898 for 2006 and $78,504 for 2007 in overtime benefits. Based on these figures, complainant contacted the OIG Hotline with this information.

11. On June 30, 2008, affiant interviewed an individual ("individual #1), who is the Director, Office of Communications, Forest Service, USDA, Washington, D.C., who provided the following information:

    a. Individual #1 has been BURROUGHS' immediate supervisor since October of 2005. BURROUGHS was hired in approximately 2001 as a GS-7 employee and has had three previous supervisors before individual #1 became her supervisor. BURROUGHS was the main

administrative officer for the Office of Communications and her job responsibilities included procurement and personnel processing including Time and Attendance Records ("T/A's") for approximately 25 employees in her immediate office. Individual #1 considered BURROUGHS to be an expert in the handling of T/A's. In the past two years, individual #1 had promoted BURROUGHS to the GS-12 level and just recently completed the paperwork to promote her to the GS-13 level. Individual #1 considered BURROUGHS part of her management team and trusted her completely.

      b. Affiant showed individual #1 copies of BURROUGHS' T/A's for the fiscal years 2007 and 2008. These T/A's showed BURROUGHS' working overtime seven days a week including weekends and holidays. The T/A's showed that BURROUGHS claimed three and a half hours of overtime every week day, ten to twelve hours of overtime on Saturdays and Sundays, and six to eight hours of holiday pay on all federal holidays, including Christmas and Thanksgiving. Individual #1 authorized only small amounts of overtime to her staff over the past three years and this was restricted to front office personnel who worked the desk at the main entrance of the office. BURROUGHS was not one of these employees authorized for overtime. All overtime had to be approved by the employee's supervisor on a separate form and attached to the employee's T/A. Individual #1 has never authorized BURROUGHS to work any overtime and had no knowledge that she had claimed overtime. Individual #1 was very upset to learn that BURROUGHS had been claiming overtime while individual #1 was her supervisor. BURROUGHS' core hours were approximately 6:30 a.m. to 3:30 p.m. on Monday through Friday. Individual #1 could not recall BURROUGHS' ever working after 4:00 p.m. BURROUGHS is not authorized to telework in her current position. Anyone working on the weekend or holidays was obliged to sign in at the front desk before admittance and departure.

    c. Individual #1 noted that it was strange that all of the copies of T/A's for BURROUGHS were listed as drafts and not as official. Normally, a draft T/A becomes official after the supervisor has dated and signed off as the authorizing official. Each official T/A includes a notation that the T/A has been signed off and sent by a supervisory official. Individual #1 could not recall ever signing off in such a manner on any of BURROUGHS' T/A's. In the normal course of business, BURROUGHS should have been sending electronically her T/A's to her immediate supervisor who would then sign, date, and approve them. While individual #1 has been BURROUGHS' immediate supervisor since 2005, she has always assumed that her deputy ("individual #2") was routinely approving BURROUGHS' T/A's. Individual #1 made this assumption since she has never received a T/A from BURROUGHS and individual #2 has been working with BURROUGHS on the Individual Development Plan ("IDP"). Approximately two years ago, individual #1 tasked individual #2 with developing an IDP for BURROUGHS' job performance to improve her skills. Individual #2 and BURROUGHS also worked closely together on daily job assignments. Individual #1 showed affiant a T/A for individual #2 which individual #2 appeared to have signed, dated, and approved in the electronic certification box.

    d. Individual #1 could not explain why the BURROUGHS' overtime payments had not been noticed in any management or budgetary reports for the past six years. BURROUGHS's duties included the purchase of items for the office. In such capacity, BURROUGHS possessed a government credit card. BURROUGHS regularly purchased items for the office such as books, video posters, and other materials used in the Office of Communication with the credit card. BURROUGHS also keeps possession of all of the employees' Official Personnel Folders ("OPF's") including her own for the Office of Communication employees. BURROUGHS was assigned a cubicle next to individual #1's office which contains two desks, two Dell PC computers (CMJBX21

and 2QL5P51), a Think Pad laptop computer (Service Tag No. LK-LTWF7), and a number of file cabinets. The cubicle has BURROUGHS' name attached to the cubicle. BURROUGHS has total access to this area and equipment.

      e. Individual #1 heard that BURROUGHS was going to purchase a house from her sister, also a Forest Service employee located in Bowie, Maryland.

      f. On June 25, 2008, individual #1 gave BURROUGHS a letter placing her on unpaid suspension pending the outcome of the OIG investigation. Individual #1 told BURROUGHS that the suspension was due to her possible involvement in criminal activity. BURROUGHS replied that this had to be because of her husband's drugs. All of BURROUGHS' keys, cards, and identifications were taken from her and she was told that she was not allowed to return to the building. Her computer access was also terminated. After BURROUGHS was escorted from the building, Forest Service law enforcement personnel disconnected the above mentioned computers and placed them in individual #1's office under lock and key for safekeeping.

12. On June 30, 2008, affiant interviewed telephonically individual #2, Deputy Director, Office of Communications, Forrest Service, USDA, who provided the following information:

      a. Individual #2's immediate supervisor is individual #1. Individual #2 is not the immediate supervisor for BURROUGHS although he worked with her on program matters and was directed by individual #1 to work with BURROUGHS on the IDP about two years ago because individual #1 was not satisfied with BURROUGHS' job performance. Individual #2 believed BURROUGHS' core hours were from about 6:30 a.m. to 3:00 p.m. and never recalled seeing her in the office after 3:15 p.m. He also never recalled BURROUGHS' working in the office on holidays or weekends, which he occasionally did. BURROUGHS was not authorized to telework.

      b. When told by affiant of the overtime claimed by BURROUGHS, individual #2

stated that he had been told of this practice earlier by individual #1 and was totally surprised by this fact. When told of the exact amounts by affiant, individual #2 was shocked. He stated that when employees work overtime in the Office of Communication the overtime form is completed by both the employee and the supervisor and attached to the T/A. BURROUGHS' job as the administrative officer was to complete the T/A's for all personnel in the office and to send them electronically for final processing and payment. After finding out about BURROUGHS' excessive overtime, individual #2 thought it was unusual that he had never approved one of BURROUGHS' T/A's, since in the absence of individual #1, he would have been the official to approve them. Besides the electronic T/A, there should be a paper copy of every employee's T/A which were kept in BURROUGHS' desk. This paper copy of the T/A, if done correctly, should include the supervisor's signature. The copy should also have the overtime form attached to it if overtime was authorized during the pay period. The overtime form should also have an approval signature by a supervisor.

      c. Individual #2 was always under the impression that individual #1 was approving all of BURROUGHS' T/A's. Individual #2 signed off on none of them. Individual #2 never had any conversations with individual #1 about BURROUGHS' T/A's until the current matter was brought to their attention. Individual #2 trusted BURROUGHS one hundred percent. Individual #2 could not believe the system did not catch BURROUGHS' claiming overtime for the past six years.

      d. BURROUGHS also had purchasing authority and a credit card for the Office of Communication.

    13. On June 30, 2008, affiant interviewed another individual ("individual #3"), External Affairs Officer, Forest Service, USDA, Washington, D.C., who provided the following information:

      a. Individual #3 oversees the Forest Service's Office of Communications in

Washington, D.C. After learning of the BURROUGHS' overtime amounts, individual #3 became very surprised and upset. Consequently, she contacted an employee relations specialist in Albuquerque, New Mexico ("individual #4). Individual #4 provided individual #3 with the following overtime amounts for BURROUGHS from 2002 to 2008:

| YEAR | BASE SALARY | OVERTIME & HOLIDAY PAY |
|---|---|---|
| 2002 | $24,317 | $11,645 |
| 2003 | $30,288 | $23,145 |
| 2004 | $38,418 | $41,045 |
| 2005 | $45,106 | $58,736 |
| 2006 | $57,160 | $48,039 |
| 2007 | $62,276 | $61,039 |
| 2008 (Until June) | $33,434 | $37,130 |
| TOTALS: | $290,999 | $280,779 |

On July 1, 2008, affiant received a message from the confidential complainant who reported to affiant that BURROUGHS claimed another $13,000 for pay periods in June of 2008, for a total of $81,134 in overtime and cash awards in fiscal year 2008.

  b. After speaking with individuals #1 and #2, individual #3 learned that each thought the other was approving BURROUGHS' T/A's. Little or no overtime is worked in the Office of Communication in Washington, D.C. Individual #3 could not say why the overtime claims were not caught by agency personnel.

  14. Affiant reviewed selected copies of BURROUGHS' Statement of Earnings and Leave while employed as a GS-9, GS-11, and GS-12 with the Forest Service. All of these statements show BURROUGHS' receipt of overtime pay during these pay periods. Some of the statements show,

in addition to the overtime pay, holiday pay as well. BURROUGHS' Statements of Earnings and Leave show a total of eight designated savings accounts with monetary deposits from BURROUGHS' biweekly salary. Two of the savings accounts, Numbers xxxxxx7247 and xx5414, have been identified as accounts with the Agriculture Federal Credit Union in Washington, D.C. The former account is in BURROUGHS' name, the latter account is in the name of a minor, with BURROUGHS listed as a co-owner of the account. The remaining six accounts on the statements are to this date unidentified.

15. Affiant reviewed a select number of BURROUGHS' Forest Service T/A's for 2007 and 2008 which showed her routinely claiming overtime and holiday hours in addition to her regular hours. The certification statements at the bottom of these T/A's show a date and time, but no supervisor's name or signature.

16. The following relevant language appears upon log-in for USDA computers, including those of BURROUGHS:

USDA Warning Banner

. . .

All activities on this system and network may be monitored, intercepted, recorded, read, copied, or captured in any manner and disclosed in any manner, by authorized personnel. THERE IS NO RIGHT OF PRIVACY IN THIS SYSTEM. System personnel may give to law enforcement officials any potential evidence of crime found on the USDA computer system. USE OF THIS SYSTEM BY ANY USER, AUTHORIZED OR UNAUTHORIZED, CONSTITUTES CONSENT TO THIS MONITORING, INTERCEPTION, RECORDING, READING, COPYING OR CAPTURING AND DISCLOSURE.

To complete the log-in procedure, the user must click on the "I Agree" box.

17. Affiant conducted an NCIC check on BURROUGHS. She has one criminal conviction in the District Court of Maryland for Prince George's County for possession of a controlled

dangerous substance with the intent to manufacture and distribute. The conviction was dated December 17, 1993. BURROUGHS served twenty days in the Department of Correction for this offense.

18. Based on the facts outlined above, affiant asserts that there is probable cause to believe that BURROUGHS has engaged in federal criminal offenses, including violations of 18 U.S.C. §§ 641 (theft of government property), 1001 (false statements), 287 (false claims), 1343 (wire fraud), and 1956 & 1957 (money laundering), and that evidence of such may be found in the office space and computers used by BURROUGHS at the Forest Service.

 

James P. Knorr
Senior Special Agent
Office of Inspector General
United States Department of Agriculture

Subscribed and sworn to before me
this _____ day of July, 2008

_____
THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
     FOR THE DISTRICT OF COLUMBIA

## ATTACHMENT A

## LOCATION TO BE SEARCHED

The objective of this affidavit is to secure a search warrant for the office space, desk, computers, and filing cabinets used by BURROUGHS, an employee of the USDA Forrest Service, at the YATES FEDERAL BUILDING, 201 14th Street, 2nd floor, Room 2 Central, SW, Washington, District of Columbia 20250. The office is further described as a cubicle approximately twelve feet by twelve feet located on the second floor center with the name "Karen Burroughs" attached to the front of the cubicle. The computers are identified by the following makes and numbers, two Dell PC computers (CMJBX21 and 2QL5P51) and a Think Pad laptop computer (Service Tag No. LK-LTWF7). The computers are presently located in the office of BURROUGHS' supervisor, individual #1, the Director, Office of Communications, Forest Service, USDA, adjacent to BURROUGHS' office.

## ATTACHMENT B
## ITEMS TO BE SEIZED

1. Any and all records of time and attendance (T/A's), overtime records, and statements of earnings and leave for BURROUGHS and other Forest Service employees.

2. Any and all records pertaining to government credit card purchases by BURROUGHS.

3. Any and all notes, records, or schedules pertaining to overtime requests or T/A processing by BURROUGHS

4. Any and all financial statements, bank accounts, or credit union accounts in the name of BURROUGHS or her family members.

5. Any and all records pertaining to the purchase of real property by BURROUGHS.

6. The three computers used by BURROUGHS while employed by the Forest Service's Office of Communication, more specifically identified as two Dell PC computers (CMJBX21 and 2QL5P51) and a Think Pad laptop computer (Service Tag No. LK-LTWF7), and the content therein.

7. All floppy disks, flash cards, thumb drives, or other peripheral drives associated with these computers which might be located in BURROUGHS' office area.

8. USDA Forest Service Official Personal Folder (OPF) for BURROUGHS

9. Any and all other evidence, cash or property reflecting violations of 18 U.S.C. §§ 641 (theft of government property), 1001 (false statements), 287 (false claims),1343 (wire fraud), and 1956 & 1957 (money laundering), described in the Affidavit of Senior Special Agent James P. Knorr.